UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ROBERT M. REIGER,

Petitioner,

v.

DWIGHT NEVEN, *et al.*,

Respondents.

Case No. 3:12-cv-00218-MMD-VPC

ORDER

Before the Court for decision is a habeas corpus petition under 28 U.S.C. § 2254 brought by Robert M. Reiger. (ECF No. 15-1.)

**I.    PROCEDURAL BACKGROUND[1]**

Reiger seeks habeas relief from a judgment of conviction entered in the Eighth Judicial District Court in Clark County, Nevada. In February 2007, after a two-day trial, a jury found Reiger guilty of trafficking in a controlled substance and possession of a controlled substance with the intent to sell. At sentencing, the state district court adjudicated Reiger a habitual offender and, with respect to the trafficking count, imposed a sentence of life in prison with parole eligibility after serving ten years. With respect to the possession count, the court imposed a maximum term of 180 months, with parole eligibility beginning after a minimum term of 60 months, to be served concurrently with the other sentence.

---

[1] This procedural background is derived from the exhibits provided by respondents at ECF Nos. 31-34 and this Court's own docket.

Reiger appealed. In October 2008, the Nevada Supreme Court issued an order affirming the convictions.

In October 2009, with the assistance of retained counsel, Reiger filed a post-conviction petition for a writ of habeas corpus in the state district court. After substituting himself in place of his attorney, he filed a pro per document entitled "Memorandum of Points and Authorities in Support of Petitioner's Amended Petition for Writ of Habeas Corpus and an Evidentiary Hearing." In the memorandum, petitioner raised additional claims. In August 2010, the state district judge entered an order denying the petition.

Reiger appealed. In March 2012, the Nevada Supreme Court issued an order affirming the denial of petitioner's post-conviction habeas petition.

Reiger sent his original federal habeas petition to this Court in April 2012. In November 2012, this Court granted Reiger leave to file an amended petition. In February 2014, this Court granted, in part, respondents' motion to dismiss and dismissed Grounds Ten, Eleven, and Twelve as untimely, and portions of Ground Six as procedurally defaulted. In May 2014, respondents filed their answer, addressing the merits of Reiger's remaining habeas claims. Reiger filed his reply in July 2014.

## II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

///

1        A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

      The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

      "[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004);

*see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."). Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## III. DISCUSSION

### A. Ground One

In Ground One, Reiger alleges that his constitutional right to due process was violated because there was insufficient evidence presented at trial to find him guilty of trafficking in a controlled substance. Specifically, he alleges that the State failed to present evidence to prove beyond a reasonable doubt that the quantity of methamphetamine in his possession was 28 grams or more.[2]

At trial, a forensic scientist for the Las Vegas Metropolitan Police Department ("LVMPD") testified about testing and weighing the substances in question. (ECF No. 32-7 at 14-27.)[3] According to her testimony, one package (Exhibit 1-B-3) contained a mixture of methamphetamine and dimethyl sulfone, a cutting agent, and weighed 15.23 grams.[4] (*Id.* at 22-24.) Eleven other packages (Exhibit 1-B) weighed a total of 61.19 grams. *Id.* at 24-25. With respect to those 11 packages, the forensic scientist testified that 9 of them tested positive for methamphetamine and that she only tested 9 of them because,

///

///

---

[2]While possession of 4 grams is sufficient to support a felony trafficking conviction under Nevada law, 28 grams or more is the quantity necessary for a category A felony conviction and the amount alleged by the State in Reiger's case. *See* NRS § 453.3385.

[3]Citations to page numbers for documents on this Court's electronic docket are based on CM/ECF pagination.

[4]The phrase "28 grams or more" in NRS § 453.3385 "refers to the aggregate weight of the entire mixture rather than the weight of the controlled substance that is contained in the mixture." *Sheriff, Humboldt Cty. v. Lang*, 763 P.2d 56, 59 (Nev. 1988).

4

| | |
|---|---|
| 1 | according to the LVMPD's statistical approach to analysis, that number was sufficient to |
| 2 | establish that all 11 contained methamphetamine. *Id.* |
| 3 |     Reiger argues that, without evidence that the two untested packages contained |
| 4 | methamphetamine or that the weight of the nine tested packages exceeded 12 grams, |
| 5 | the State failed to prove that the total amount of methamphetamine in his possession |
| 6 | exceeded 28 grams. |
| 7 |     The Nevada Supreme Court did not explain its reasons for rejecting Reiger's |
| 8 | sufficiency of evidence claim. (ECF No. 33-7 at 2 n.1.) Even so, this Court must presume |
| 9 | that the state supreme court adjudicated his federal law claim on the merits for the |
| 10 | purposes of 28 U.S.C. § 2254(d). *See Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) |
| 11 | ("When a state court rejects a federal claim without expressly addressing that claim, a |
| 12 | federal habeas court must presume that the federal claim was adjudicated on the |
| 13 | merits."). |


according to the LVMPD's statistical approach to analysis, that number was sufficient to establish that all 11 contained methamphetamine. *Id.*

Reiger argues that, without evidence that the two untested packages contained methamphetamine or that the weight of the nine tested packages exceeded 12 grams, the State failed to prove that the total amount of methamphetamine in his possession exceeded 28 grams.

The Nevada Supreme Court did not explain its reasons for rejecting Reiger's sufficiency of evidence claim. (ECF No. 33-7 at 2 n.1.) Even so, this Court must presume that the state supreme court adjudicated his federal law claim on the merits for the purposes of 28 U.S.C. § 2254(d). *See Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits.").

The standard used by the federal habeas court to test whether sufficient evidence supports a state conviction is the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). And because this Court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this Court "think[s] the state court made a mistake," the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id.*

Here, Reiger's argument would, contrary to the *Jackson* standard, require this Court to view the evidence in the light most favorable to the defense, not the prosecution. Beyond that, the argument is premised on the extremely unlikely scenario that (1) the

LVMPD scientist happened to omit from testing the only two (out of 11) packages that did not contain methamphetamine and (2) those two packages outweighed the nine tested packages by a factor of nearly four to one. Certainly, a rational factfinder could find beyond a reasonable doubt that the nine tested packages totaled at least 12.78 grams (i.e. enough to total more than 28 grams when combined with Exhibit 1-B-3), when all eleven packages totaled 61.19 grams.

Because Reiger falls well short of satisfying the *Jackson* standard, Ground One is denied.[5]

## B. Ground Two

In Ground Two, Reiger claims that he received ineffective assistance of counsel, in violation of his constitutional rights, due to counsel's failure to challenge the trial testimony of the LVMPD forensic scientist. In particular, Reiger argues that effective counsel would have objected to her testimony based on the State's failure to comply with NRS § 174.234(2), which imposed notice requirements when a party intended to call an expert witness in a criminal case,[6] and would have impeached her testimony with inconsistent testimony from a different State's expert at Reiger's preliminary hearing. With respect to the latter, the State's expert testified at the preliminary hearing that his test of the package later admitted as Exhibit 1-B-3 at trial did not indicate the presence of methamphetamine. (ECF No. 31-13 at 10-11.)

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief — deficient performance by counsel and prejudice. 466 U.S. at 687. To

---

[5]Reiger also claims that the performance of his trial and appellate counsel fell below constitutional standards due to their failure to raise the sufficiency of evidence argument he raises in Ground One. Given the implausibility of the argument, counsel's failure to raise it was not objectively unreasonable under the *Strickland* standard discussed below.

[6]The Nevada Supreme Court has determined that NRS § 174.234 is unconstitutional to the extent it requires a defendant to disclose expert witnesses but does not require the State to reciprocate by disclosing expert rebuttal witnesses. *Grey v. State*, 178 P.3d 154, 160 (Nev. 2008),

6

meet the performance prong, a petitioner must demonstrate that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. As to the prejudice prong, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696. Put another way, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In addressing Reiger's ineffective assistance of counsel ("IAC") claims in his state post-conviction proceeding, the Nevada Supreme Court correctly identified *Strickland* as the governing standard. (ECF No. 34-4 at 2-3.) The Nevada Supreme Court addressed the claim contained in Ground Two as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to object to the State's failure to properly provide notice of the forensic scientist pursuant to NRS 174.234(2). Appellant failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced as he failed to demonstrate any bad faith on the part of the State. *See* NRS 174.234(3)(b) (providing that the court should prohibit an expert from testifying if the court determines that the party acted in bad faith by not disclosing the information required pursuant to NRS 174.234(2)). The record indicates that the first forensic chemist to analyze the drugs was unavailable to testify. The State informed the court and opposing counsel that a different forensic chemist would be analyzing the drugs and testifying at trial. Therefore, we conclude that the district court did not err in denying this claim.

*Id.* at 6.

This Court is bound by Nevada Supreme Court's interpretation of NRS § 174.234(2). *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Nevada Supreme Court did not specifically address counsel's failure to exploit the alleged discrepancy between the preliminary hearing testimony and the trial testimony. Again, this Court must nonetheless presume that the state court adjudicated, and rejected, that aspect of the claim on the merits for the purposes of § 2254(d). *See Johnson*, 133 S. Ct. at 1096. Even reviewed *de novo*, however, the claim falls short of warranting habeas relief.

The State's expert at the preliminary hearing also testified that he tested all eleven of the packages later admitted at trial as Exhibit 1-B. ECF No. 31-13 at 10, 21. According

to his testimony, all the packages tested positive for methamphetamine and weighed a total of 61.78 grams. *Id*. Because this testimony and the report on which it was based established the presence of more than 28 grams of methamphetamine, even without including the package in dispute, counsel was not ineffective by not using those materials to impeach the trial testimony of the LVMPD forensic scientist. For the same reason, Reiger cannot establish that, but for counsel's omission, there is a reasonable probability that his trial would have resulted in a more favorable outcome.

Ground Two is denied.

**C.     Ground Three**

In Ground Three, Reiger alleges his constitutional right to due process was violated by virtue of the trial court's failure to include his proposed language in several jury instructions. At trial, his counsel asked to add the following language to four instructions (Instructions 4, 5, 7, and 9):

> That if the State has failed to prove beyond a reasonable doubt that the defendant did knowingly and intentionally sell or was knowingly and intentionally in actual or constructive possession of a Schedule 1 controlled substance or any mixture which contains methamphetamine you must find the defendant not guilty of trafficking in a controlled substance.

(ECF No. 32-7 at 3.)

The language was not included in the instructions issued to the jury. (ECF No. 32-1 at 5-6, 8, 10.)

The Nevada Supreme Court rejected, without discussion, the claim contained in Ground Three. (ECF No. 33-7 at 2 n.1.) Because no U.S. Supreme Court case directly addresses whether a constitutional violation may arise from a trial court's refusal to issue a jury instruction proposed by the defense, it cannot be said that the Nevada Supreme Court's decision is not entitled to deference under 28 U.S.C. § 2254(d). *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue presented] here, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'").

///

8

Moreover, "[a] defendant is not entitled to any particular form of instruction, nor is he entitled to an instruction that merely duplicates what the jury has already been told." *United States v. Lopez-Alvarez*, 970 F.2d 583, 597 (9th Cir. 1992). The jury at Reiger's trial was specifically instructed throughout the instructions that the State must prove his guilt "'beyond a reasonable doubt." (ECF No. 32-1 at 7, 9, 11, 13.) The jury was also instructed that it had to acquit: "If you have a reasonable doubt as to the guilt of the Defendant, he is entitled to a verdict of not guilty." (*Id.* at 13.) Moreover, the instructions that contain the elements of the two offenses at issue—possession of a controlled substance with intent to sell and possession of a controlled substance—instruct the jury that a defendant is guilty "if each of the [] elements are proved." (ECF No. 32-1 at 6, 10 (Instructions 5 and 9).) It was thus clear that all elements would have to be established for the jury to find guilt. Because the proposed instructions were redundant and potentially confusing, the state trial court did err by not including them in the set of instructions issued to the jury.

Ground Three is denied.

**D.     Ground Four**

In Ground Four, Reiger claims that his *constitutional* rights were violated as a result of the state trial court's refusal to dismiss a juror who had an out-of-court contact with someone associated with him (Reiger). On the second day of Reiger's two-day trial, the court was notified that someone had communicated with a juror about the case while the juror was using the restroom. (ECF No. 32-4 at 15-22.) The court questioned the juror about the incident and allowed both counsel to also ask questions. (*Id.*)

The juror related that a very brief exchange occurred, during which the person disparaged the testimony of an important eye-witness for the State (Kelly Souther). (*Id.*) The juror informed the court that he did not believe the incident would influence his ability to be fair and impartial. (*Id.*) The juror also noted that he recognized the person as someone who had been sitting in the back of the courtroom and speculated that he was related to Reiger. (*Id.*) The court subsequently ascertained, outside the presence of the

juror, that the person was Reiger's brother and ordered him removed from the courthouse. (*Id.* at 23-25.)

The Nevada Supreme Court rejected, without discussion, the claim contained in Ground Four. (ECF No. 33-7 at 2 n.1.) In *Mattox v. United States*, 146 U.S. 140 (1892), the Supreme Court held that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox*, 146 U.S. at 150. In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court reversed a conviction under *Mattox* when it was shown that during the trial someone had told the jury foreman that he could profit by acquitting the defendant. *Remmer*, 347 U.S. at 228. The Court in *Remmer* held that *Mattox*'s "presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* at 229.

The Supreme Court has also recognized, however, that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Thus, the Ninth Circuit has held that, when an unauthorized communication with a juror was "*de minimis*," "the defendant must show that the communication could have influenced the verdict before the burden of proof shifts to the prosecution." *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 696 (9th Cir. 2004). A communication is possibly prejudicial — i.e., not *de minimis*, if it "raises a risk of influencing the verdict." *Id.* at 697.

The court in *Caliendo* identified the factors to be considered in making that determination:

> Whether an unauthorized communication between a juror and a third party concerned the case is but one factor in determining whether the communication raised a risk of influencing the verdict. Other factors may include the length and nature of the contact, the identity and role at trial of the parties involved, evidence of actual impact on the juror, and the possibility of eliminating prejudice through a limiting instruction. In weighing these factors we generally accord some deference to the findings of the trial judge, who is in the best position to determine whether possibly prejudicial

10

misconduct took place and, if so, whether the government clearly established harmlessness.

*Caliendo*, 365 F.3d at 697–98 (citation omitted).

Here, the communication concerned the case. However, it was very brief and, because Reiger's brother was already in the bathroom when the juror walked in (ECF No. 32-4 at 17), appears to have been coincidental. In addition, the juror terminated the conversation when Reiger's brother mentioned the witness (*Id.* at 18) and reported the contact to the bailiff, as previously instructed to do by the court. (*Id.* at 19.) Jurors were instructed to disregard anything they saw or heard outside the courtroom and base their verdict only on evidence admitted at trial. (ECF No. 32-1 at 15.) The trial judge was satisfied, based on the juror's description of the incident and his assurances of impartiality, that the juror should not be discharged. That finding is entitled to deference.

Based on the foregoing, this Court concludes that the unauthorized contact was *de minimis* and Reiger has not shown that communication could have influenced the verdict. Accordingly, the Nevada Supreme Court's decision to reject the claim was not an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts.

Ground Four is denied.

**E.     Ground Five**

In Ground Five, Reiger alleges that his constitutional rights were violated due to several instances of judicial misconduct by the trial judge. He cites to remarks by the trial judge that he claims to have ridiculed the defense. (ECF No. 32-2 at 30-31, 46; ECF No. 32-3 at 10, 19; ECF No.32-8 at 8.) He also cites to the trial judge's repeated admonishments for defense counsel to "have a seat" after ruling upon his objections. (ECF No. 32-2 at 30-31, 46; ECF No. 32-7 at 40; ECF No. 32-8 at 15, 22.)

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955). A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply

require that the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted). To succeed on a judicial bias claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'" *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Indeed, bias can "almost never" be demonstrated solely on the basis of a judicial ruling. *Liteky*, 510 U.S. at 555.

The Nevada Supreme Court addressed the allegations in Ground Five in deciding Reiger's direct appeal. (ECF No. 33-7.) The state supreme court recounted the conduct at issue and agreed that it "raise[d] concerns under the Nevada Code of Judicial Conduct Canon 3B, which requires judges to be 'patient, dignified and courteous' when interacting with counsel and litigants." (*Id.* at 4-6.) Analogizing Reiger's case to *Oade v. State*, 960 P.2d 336 (Nev. 1998), a case in which it reversed a conviction due to similar judicial conduct, the Nevada Supreme Court stated as follows:

> First, despite similarities in attitude and tone, unlike the district court in *Oade*, the district court in this case did not resort to fines to punish defense counsel's perceived infractions. Neither did it repeatedly call for decorum in the courtroom, which would imply that such was not being kept, or undermine the fairness of Reiger's trial by commenting on the merits of Reiger's defense in front of the jury. Second, the record reveals that the district court's exasperated tone was animated out of a concern for expeditiously concluding Reiger's trial rather than any true animus for the defense. Third, since the evidence against Reiger — including Souther's eyewitness testimony as well as the testimony of the four responding officers and the State's forensic chemist — was strong, we conclude that the conduct of the district court did not adversely impact the jury's verdict. Thus, although inappropriate at times, we conclude that the district court's conduct did not constitute plain error.

*(Id.* at 6-7 (footnote omitted).)

While the Nevada Supreme Court premised its decision entirely on state law, the standards it employed in denying relief were no less protective of Reiger's rights (and perhaps more so) than the federal standards discussed above. In addition, the court's findings of fact were reasonable in light of evidence presented in the state court proceeding. Thus, even in the absence of citation to federal law, this Court must nonetheless defer to the Nevada Supreme Court's decision under § 2254(d) because neither the reasoning nor the result of the decision contradicts U.S. Supreme Court precedent. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that state court is not required to cite U.S. Supreme Court cases, or even be aware of them, to avoid its decision being "contrary to" U.S. Supreme Court precedent).

Ground Five is denied.

**F.     Ground Six**

In Ground Six, Reiger alleges that he received ineffective assistance of counsel, in violation of his constitutional rights, because his counsel failed to impeach the testimony of a police officer (Officer Barrera) regarding the location of Viagra bottles found in Reiger's possession. At trial, Officer Barrera testified that sample bottles of Viagra were among the contents of a purple Crown Royal bag that, according to other testimony, was discarded by Reiger as he drove through a car wash. (ECF No. 32-5 at 32.) He further testified that, according to police records, the police impounded 24 bottles of Viagra. (*Id.* at 33.) Reiger contends that effective counsel would have impeached this testimony with Officer Barrera's written report, which stated that the bottles of Viagra were recovered from inside Reiger's van, not the Crown Royal bag.

The Nevada Supreme Court addressed this IAC claim as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to impeach Officer Barrera with his arrest report, which contradicted his testimony about where the Viagra was found. Appellant failed to demonstrate that he was prejudiced as any impeachment on the alleged discrepancy regarding the location of the 24 bottles of Viagra did not have a reasonable probability of altering the outcome of trial — guilty verdicts for

13

trafficking in a controlled substance (methamphetamine) and possession of a controlled substance with intent to sell (heroin). Therefore, we conclude that the district court did not err in denying this claim.

(ECF No. 34-4 at 5-6.)

This was a reasonable application of the *Strickland* standard. In addition, as respondents point out, Officer Barrera's brief references were the only instances of a witness mentioning Reiger's possession of Viagra. Any impeachment value to be had from cross-examining Officer Barrera regarding the location of the bottles would have likely been outweighed by the detrimental impact of focusing the jury's attention on the fact that Reiger was in possession of several sample bottles of Viagra. Thus, counsel did not perform below an objective standard of reasonableness by not impeaching Officer Barrera with his arrest report.

Ground Six is denied.

**G.    Ground Seven**

In Ground Seven, Reiger alleges that he received ineffective assistance of counsel, in violation of his constitutional rights, because his counsel failed to adequately cross-examine eye-witness Souther. Reiger contends that Souther's testimony contained inconsistencies with regard to what he observed when the police stopped Reiger prior to Reiger's arrest. He also contends that Souther's testimony about the stop conflicted with the testimony of one of the police officers (Officer Tlockowski). Reiger argues that effective counsel would have cross-examined Souther on these points.

The Nevada Supreme Court addressed this IAC claim as follows:

> [A]ppellant claimed that trial counsel failed to adequately cross-examine K. Souther about inconsistencies in his testimony about the "stop." Appellant failed to demonstrate that he was prejudiced because he failed to demonstrate that any further questions regarding the "stop" would have had a reasonable probability of altering the outcome at trial. Trial counsel exhaustively questioned Souther about his story and his ability to observe the bag being thrown from the van. Therefore, we conclude that the district court did not err in denying this claim.

(ECF No. 34-4 at 4.)

///

Here again, the Nevada Supreme Court was reasonable in its application of the *Strickland* standard. This Court agrees that counsel's cross-examination of Souther was thorough and notes that it was roughly twice as long as the State's direct examination. (ECF Nos. 32-2, 32-3.) Counsel was not ineffective for not trying to exploit what appear to be, at best, minor inconsistencies about what Souther observed. Thus, not only is the Nevada Supreme Court's prejudice conclusion at least arguable among fair-minded jurists, this Court concludes that counsel's performance did not fall below an objective standard of reasonableness.

Ground Seven is denied.

**H.     Ground Eight**

In Ground Eight, Reiger alleges the state trial court violated his constitutional rights by allowing two police officers to testify as to their opinion that the packaging of the drugs indicated an intent to sell. At trial, Officer Tlockowski and Officer Barrera each testified that placing drugs into small baggies or balloons showed that they were meant for resale. (ECF No. 32-4 at 43-45; ECF No. 32-5 at 35.) Reiger contends that the testimony amounted to an expert opinion that was admitted without qualifying either officer as an expert.

The Nevada Supreme Court rejected, without discussion, the claim contained in Ground Eight. (ECF No. 33-7 at 2 n.1.) Habeas relief is generally unavailable with respect to violations of state evidence law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal writ is not available for alleged error in the interpretation or application of state law); *Rhoades v. Henry*, 638 F.3d 1027, 1034, n. 5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief."); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991) (petitioner may not challenge evidentiary ruling on ground that it violated state's evidence code; failure to comply with state rules of evidence does not warrant federal habeas relief). The erroneous admission of evidence will rise to a constitutional violation only when "there are no permissible inferences the jury may draw from the evidence" and that evidence is "of such quality as necessarily

prevents a fair trial." *Jammal*, 926 F.2d at 920 (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)) (internal quotation marks omitted).

Here it is far from clear that the testimony at issue constituted expert opinion. Under Nevada law, expert opinions are based on "scientific, technical or other specialized knowledge" (NRS § 50.275), while lay witness opinion testimony is "[o]pinions or inferences . . . [r]ationally based on perception of the witness; and . . . helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue" (NRS § 50.265). Arguably, it did not require specialized knowledge for the officers to opine that drugs placed in multiple, small baggies indicated that the drugs were packaged for resale. In any case, this is the type of evidentiary ruling that is the province of the state court, not a cognizable ground for federal habeas relief.

Ground Eight is denied.

**I.    Ground Nine**

In Ground Nine, Reiger alleges that the state trial court violated his constitutional rights in adjudicating him a habitual criminal because the court did not hold a proper hearing and the adjudication was made by a judge rather than a jury. He also alleges that the court failed to specify which convictions it relied upon to find him a habitual criminal and that two of his convictions arose out of the same transaction.

The Nevada Supreme Court rejected, without discussion, the claim contained in Ground Nine. (ECF No. 33-7 at 2 n.1.) As a general matter, a challenge to a trial court's application of its own state's sentencing laws does not raise a federal question cognizable on habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." (citations omitted)); *Sturm v. California Adult Authority*, 395 F.2d 446, 448 (9th Cir. 1967) ("A state court's interpretation of its [sentencing] statute does not raise a federal question.").

///

To state a cognizable federal habeas claim based on a claimed state sentencing error, petitioner must show that the alleged error was "so arbitrary or capricious as to constitute an independent due process violation." *Richmond v. Lewis*, 606 U.S. 40, 50 (1992). Reiger has made no such showing here. Indeed, the record shows that the State provided the court with certified copies of seven prior felony convictions (ECF No. 32-11 at 3-4), while Nevada law only requires a finding of three to impose the sentence Reiger received. *See* NRS § 207.010.

Reiger's claim that he had a right to have a jury determine his sentence is also without merit. The Nevada Supreme Court has rejected "any interpretation of [its] prior case law as suggesting that facts other than prior convictions must be found in order to adjudicate a defendant a habitual criminal." *O'Neill v. State*, 153 P.3d 38, 43 (Nev. 2007). And, the U.S. Supreme Court has specifically excluded the fact of a prior conviction as a fact that must be submitted to a jury for the purposes of sentence enhancement. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Ground Nine is denied.

## IV.     CONCLUSION

For the reasons set forth above, Reiger's petition for habeas relief is denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

(1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Reiger's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Reiger's habeas claims.

It is therefore ordered that Reiger's petition for writ of habeas corpus (ECF No. 15-1) is denied. The Clerk will enter judgment accordingly.

It is further ordered that a certificate of appealability is denied.

DATED THIS 22nd day of May 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE